**STATE of Minnesota, Respondent,**

v.

**Marco TRAVICA, Appellant.**

**No. CX–86–634.**

Court of Appeals of Minnesota.

Jan. 6, 1987.

Hubert H. Humphrey, III, Atty. Gen., Robert A. Stanich, Sp. Asst. Atty. Gen., St. Paul, John P. Dimich, Itasca Co. Atty., Grand Rapids, for respondent.

C. Paul Jones, State Public Defender, Mark F. Anderson, Asst. State Public Defender, Minneapolis, for appellant.

Considered and decided by POPOVICH, C.J., and PARKER and LESLIE, JJ., with oral argument waived.

## OPINION

LESLIE, Judge.

Marco Travica appeals from his convictions of second degree burglary with a tool, attempted second degree burglary with a tool and possession of burglary tools. He claims his conviction of possession of burglary tools is barred by Minn.Stat. § 609.04 (1986) and contends there was insufficient evidence to support the verdict.

## FACTS

About 3:30 a.m. on August 3, 1985, Timothy and Charlotte Garvey saw two men standing outside the rear entrance of Burt's Radio and TV store in Grand Rapids, Minnesota. The men were prying the hinge side of the door. Charlotte Garvey testified that one person was tall and slim and the other was short and stocky. One of the men was caught that night and turned out to be Jerry Duffney, who is 5'5" tall and weighs 150 pounds. Appellant is 5'11" tall and weighs 230 pounds. Timothy Garvey called the police, who arrived at the scene minutes later.

Officer Brian Johnson and Reserve Officer Tony Anick drove into the alley near Burt's, with the headlights of their car off. They saw two men outside of Burt's trying to gain entrance by force. Evidence later showed that there were pry marks on the door. The two suspects looked up momentarily and the officers proceeded forward. The suspects looked up a second time and Officer Johnson turned on the car's headlights. Officer Anick got a clear look at the faces of the suspects and later made an in-court identification of Travica as one of the suspects.

The two suspects went running in different directions. Officer Anick chased the smaller man on foot and noticed the man throw something by the building as he ran. Officer Johnson chased the larger man

with the squad car but lost him. Johnson then joined in the chase of the smaller man and eventually caught him. This person turned out to be Jerry Duffney.

The officers found a screwdriver, pry bar and a pair of gloves in the area where Duffney was seen throwing something. The officers also searched appellant's automobile which was parked nearby. They found a wallet containing appellant's driver's license, other identification and $255 in cash. They found a red metal box with the name "Midway Bowl" printed on it. Inside the box was an "impact" wrench used to repair automatic pin-setting machines at the Midway Bowl bowling alley. In the trunk of the car was a crowbar, three pairs of tin snips, a splitting maul, and a commercial saw used to cut through heavy metal and cement. The state introduced expert testimony to establish that these items could be used in burglaries. The police also found video recording equipment in the trunk.

At 6:40 a.m. that morning, Assistant Chief of Police Harvey Dahlein and Deputy Sheriff Patrick Medure saw appellant standing at a public telephone booth a few blocks from Burt's. Appellant told the officers his car had run out of gasoline outside of Grand Rapids. The officers offered to drive appellant to a gas station, but appellant said he didn't have any money. The officers got some gas for appellant and transported him and the gas outside of Grand Rapids to the purported location of appellant's automobile.

The officers initially had the impression that the car was only a short distance out of town, but appellant told them to go to a cemetery 5–6 miles away. When they arrived at the cemetery, the officers found no car there and no car tracks on the gravel roadway into the cemetery.

Appellant then stated that his friend Jerry Duffney must have gotten the car started and returned to town. Appellant claimed he had left Duffney with the car at about 12:15 a.m. When asked why Duffney did not pick up appellant on the way back to town, appellant said he must have been sleeping in a ditch then. However, there was no dirt or grass on appellant's clothing and despite the fact that there were many mosquitoes out that night, appellant had no mosquito bites. The officers then took appellant to his brother's place in a nearby town.

At about 10:00 a.m. that morning, Lenor Ruppelius, an owner of the Midway Bowl bowling alley in Grand Rapids discovered that his business had been ransacked earlier that morning. Several locked offices had been entered and the contents of file cabinets were strewn about. A cash register, nine vending machines and sixty bowling lockers had been pried open. An impact wrench and some video equipment was missing from the bowling alley.

Several items of physical evidence were taken to the Bureau of Criminal Apprehension (BCA) for testing. The BCA determined that a footprint on a piece of paper found in the bowling center matched a tennis shoe Duffney was wearing at the time of his arrest. Officer Dahlein testified that in his opinion, appellant's tennis shoe also matched a footprint on a piece of paper found in the bowling alley. The BCA, however, found no affirmative match to appellant's shoe, and found tread marks on some papers inconsistent with either Duffney's or appellant's shoes.

The screwdriver that Duffney had thrown while being chased had paint scrapings on the blade similar to paint samples taken from the lockers and cigarette machines in the bowling alley, but there was no positive match. The crowbar found in the grass and a second crow bar found in the trunk of appellant's car had blue paint scrapings similar to a paint sample taken from the bowling alley but there was no positive match.

James Pagel, the owner of Burt's, testified that appellant and Duffney had stopped in his store to look at used televisions at 5:15 p.m. on the day before the break-in. Appellant seemed attentive at what Pagel had to offer in televisions, but Duffney seemed to wander around the store as if he were "casing the joint."

Tony Anick, the reserve police officer, made an in-court identification of appellant as the man he saw outside the rear entrance of Burt's. Anick made this statement on the second day of his testimony, over appellant's objections. Anick had at least two chances prior to this time to make such an identification, but did not do so.

The jury found appellant guilty of second degree burglary for burglarizing the Midway Bowl, attempted second degree burglary for attempting to burglarize Burt's, and possession of burglary tools. The trial court sentenced appellant to concurrent prison terms of 21 months for second degree burglary, 12½ months for attempted second degree burglary and 19 months for possession of burglary tools. The court also ordered appellant to pay restitution in the amount of $6,268.18. Appellant chose to have the presumptive stayed sentence of 21 months executed.

## ISSUES

1. Was appellant's conviction of possession of burglary tools barred under Minn. Stat. § 609.04 (1986)?

2. Was there sufficient evidence for the jury to reasonably conclude appellant was guilty of second degree burglary and attempted second degree burglary?

## ANALYSIS

■ 1. Appellant claims that his conviction of possession of burglary tools should be reversed because it is an included offense of the crime of burglary with a tool. The State agrees with appellant and concedes that separate convictions for both crimes are barred under Minn.Stat. § 609.04 (1986), which provides:

Upon prosecution for a crime, the actor may be convicted of either the crime charged or an included offense, but not both. An included offense may be any of the following

\*  \*  \*  \*  \*  \*

(4) A crime necessarily proved if the crime charged were proved.

Minn.Stat. § 609.04 forbids two convictions of the same offense or of one offense and a lesser included offense on the basis of the same criminal act. *State v. Whisonant*, 331 N.W.2d 766, 769 (Minn.1983). In applying section 609.04 the court must look at the statutory definitions rather than the facts in the particular case to determine whether the lesser offense is necessarily included. *Id.* It is true that one cannot commit either burglary with a tool or attempted burglary with a tool without committing the offense of possession of burglary tools, as those offenses are statutorily defined. *See* Minn.Stat. §§ 609.17, subd. 1, 609.582, subd. 2(d) and 609.59 (1986). However, Minn.Stat. § 609.585 (1986), provides:

A prosecution for or conviction of the crime of burglary is not a bar to conviction of any other crime committed on entering or while in the building entered.

In this case, the trial court failed to ask the jury to specify what tools in appellant's possession constituted the offense of possession of burglary tools. If the jury found appellant guilty for possessing the crow bar which was allegedly used to commit the burglary, then section 609.585 would allow a conviction for possession of burglary tools. The burglary offense would not be a bar to conviction of the offense of possession of burglary tools. In the alternative, if the jury found appellant guilty for possessing the tools found in the trunk of his automobile, then section 609.585 would be inapplicable. Instead, section 609.04 would apply to bar conviction of the offense. Because the jury was not asked to specify the basis for the possession offense, the conviction for this offense must be vacated.

■ 2. Appellant contends there was insufficient evidence for the jury to conclude he was guilty of second degree burglary and attempted second degree burglary. Upon review of a jury verdict, this court is limited to determining:

whether, given the facts in the record and the legitimate inferences that can be drawn from those facts, a jury could reasonably conclude that the defendant

was guilty of the offense charged. We cannot retry the facts, but must take the view of the evidence most favorable to the state and assume that the jury believed the state's witnesses and disbelieved any contrary evidence.

*State v. Merrill,* 274 N.W.2d 99, 111 (Minn. 1978).

Here, appellant claims he was not one of the two burglars and that the evidence is insufficient to place him at the scene of the crime. He contends the in-court identification made by reserve officer Anick was inadequate as a matter of law. Anick had seen appellant in the police station only a few hours after the burglary and had not made an identification then. Anick testified on the first day of trial and did not make an identification. It was only on the second day of trial that Anick realized he could make such an identification. Also, officer Brian Johnson who had chased the man Anick claimed to be appellant was unable to make a similar identification. Furthermore, appellant claims if he had committed the crime, it is improbable that he would be standing at a telephone booth four blocks from the scene of the crime a few hours later.

The determination of the credibility of witnesses and the weight given to their testimony is exclusively within the province of the jury. *Id.* Additionally, circumstantial evidence is sufficient to convict if the proved circumstances are consistent with the hypothesis that the accused is guilty and inconsistent with any rational hypothesis except that of his guilt. *State v. Berndt,* 392 N.W.2d 876, 880 (Minn.1986). Here, the police found appellant's wallet, burglary tools, money and stolen property in appellant's car, which was parked a short distance from Burt's. These circumstances are consistent with appellant's guilt and inconsistent with any other rational hypothesis. There was sufficient evidence for the jury to reasonably conclude appellant was guilty of the crimes charged.

## DECISION

There is sufficient evidence in the record for the jury to find appellant guilty as charged. However, Minn.Stat. § 609.04 (1986) requires reversal of appellant's possession conviction.

Affirmed in part, reversed in part and remanded.